_____

|  |  |
|---|---|
| | ) |
| | ) |
| **AZIM NASIR et al.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) |
| | ) **Case No. 19-cv-11196-DJC** |
| | ) |
| **TOWN OF FOXBOROUGH et al.,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |
| | ) |
| | ) |

_____)

## MEMORANDUM AND ORDER

**CASPER, J.**                                                              **March 3, 2020**

## I.      Introduction

Plaintiffs Azim Nasir, Aazar Nasir and Refat Nasir (the "Nasirs") have filed this lawsuit against the Town of Foxborough, the Foxborough Police Department (collectively, "Foxborough"), Officer James Headd ("Officer Headd") and Officer Steve Easter ("Officer Easter") (collectively, the "Officers") alleging a violation of 42 U.S.C. § 1983 (Count 1), a violation of the right to privacy (Count 2), theories of trespass (Counts 3 and 4), intentional infliction of emotional distress, intentional and negligent infliction of emotional distress (Counts 5, 6 and 8), conversion (Count 7), defamation (Count 9) and invasion of privacy (Count 10).  D. 1-1.  Foxborough and the Officers have each moved to dismiss.  D. 11; D. 13.  For the reasons stated below, the Court ALLOWS Foxborough's motion, D. 11, and ALLOWS IN PART and DENIES IN PART the Officers' motion, D. 13.

## II.      Standard of Review

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id. Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the conduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted). In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (citation omitted).

The Court will dismiss a pleading that fails to include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "To avoid dismissal, a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" García-Catalán, 734 F.3d at 102 (quoting Fed. R. Civ. P. 8(a)(2)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557) (alteration in original). "In determining whether a [pleading] crosses the plausibility threshold, 'the reviewing court [must] draw on its judicial experience and common sense.'" García-Catalán, 734 F.3d at 103 (alteration

in original) (citation omitted). "This context-specific inquiry does not demand 'a high degree of factual specificity.'" Id. (citation omitted).

### III. Factual Background

Unless otherwise noted, the following factual summary is based upon the allegations in the Nasirs' complaint, D. 1-1, which are accepted as true for the consideration of the motions to dismiss.

Plaintiff Aazar Nasir resides with his parents, Plaintiffs Azim Nasir and Refat Nasir in their family home in Foxborough, Massachusetts (the "Nasir Family Home"). D. 1-1 ¶¶ 1-3, 13. Before May 26, 2017, Aazar Nasir's wife, Maryam Ansari-Nasir ("Ansari-Nasir"), lived with him there. Id. ¶¶ 14-15, 36. As alleged, Ansari-Nasir "abandoned their marriage and family home" on May 26, 2017. Id. ¶ 15. On that day, Ansari-Nasir contacted the Foxborough Police Department requesting information on a "civil standby" from police to allow her to retrieve her personal property from the Nasir Family Home. Id. ¶¶ 12, 21-22; D. 12-1 at 2.[1] At about 1:46 a.m. on May 27, 2017, a Foxborough patrolman returned Ansari-Nasir's call. Id. Ansari-Nasir explained that she felt she needed to leave the Nasir Family Home and that she would be residing in New York. Id. The Foxborough patrolman advised Ansari-Nasir to come to the Foxborough police station the following day to speak to an officer about doing a civil standby. Id. at 3.

Later that day at approximately 4 p.m., Officers Headd and Easter arrived at the Nasir Family Home to escort Ansari-Nasir and her family to collect her belongings (the "May 27, 2017 Incident"). D. 1-1 ¶¶ 32-33. The police report detailing the May 27, 2017 Incident describes the

---

[1] The Court may, without converting the motion into one for summary judgment, rely upon the police report detailing this call, D. 12-1, and the police report detailing the Officers' visit to Nasir Family Home on May 27, 2017, 12-2, as their contents are referenced in the complaint, D. 1-1 ¶¶ 21-26, 28-30, 32, 141-142, 145, 225, and thus are "fairly incorporated within." Rodi v. S. New England Sch. of Law, 389 F.3d 5, 12 (1st Cir. 2004).

purpose of the police escort as to "assist a female party . . . with a civil stand by." D. 12-2 at 3. Ansari-Nasir, her family and the Officers were met by Azim Nasir. D. 1-1 ¶¶ 39-43. Officers Headd and Easter requested a "ten-minute courtesy" for Ansari-Nasir to collect her property, but Azim Nasir declined and demanded that the Officers leave the property. Id. ¶¶ 42-44. Against Azim Nasir's wishes, Officer Easter escorted Ansari-Nasir to collect her possessions while Officer Headd stood in front of Azim Nasir and instructed him not to move. Id. ¶¶ 46-47, 66. The Nasirs repeatedly objected to entry into their home and the situation escalated causing a "commotion." Id. ¶¶ 47, 70. Officer Headd instructed Azim Nasir that he would have to arrest him if he did not comply with instructions. Id. ¶¶ 64, 67. The Officers did not have a warrant nor authorization from a court to effectuate a civil standby. Id. ¶¶ 39, 55.

Officer Easter encountered Aazar Nasir as they were accompanying Ansari-Nasir up the stairs, id. ¶ 74, and physically restrained Aazar Nasir by putting a hand on his chest and pushing him against the wall, id. ¶ 75. Ansari-Nasir and her family collected various objects from the Nasir Family Home that the Nasirs allege did not belong to her. Id. ¶¶ 78, 91. Refat Nasir objected to specific items being removed and the Officers took no action in response to these objections and continued to allow Ansari-Nasir to remove items. Id. ¶ 78.

## IV.    Procedural History

The Nasirs instituted this action on May 15, 2019, in Norfolk Superior Court, D. 1-1, and Defendants subsequently removed the case to this Court, D. 1. Foxborough and the Officers each have now moved to dismiss. D. 11; D. 13. The Court heard the parties on the pending motions and took these matters under advisement. D. 20.

**V.     Discussion**

    **A.     Claims against the Town of Foxborough**

       *1.     Constitutional Claims: Municipal Liability*

The Nasirs brings a constitutional claim under Section 1983, Count 1, against Foxborough alleging violation of their constitutional rights.  D. 1-1 ¶¶ 161-164, 168-170, 230-232.  In its' motion to dismiss, Foxborough contends that these claims fail because they do not allege any specific wrongdoing by the town.  D. 12 at 5-9.

Section 1983 liability cannot be established by a respondeat superior theory.  See Leavitt v. Corr. Med. Servs., Inc., 645 F.3d 484, 502 (1st Cir. 2011); Sanchez v. Pereira-Castillo, 590 F.3d 31, 49 (1st Cir. 2009); Iqbal, 556 U.S. at 676 (stating that "vicarious liability is inapplicable to . . . [Section] 1983 suits").  "Rather, a local governing body can be sued directly under [Section] 1983 only where 'the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulations or decision officially adopted and promulgated by that body's officers . . . (or was taken) pursuant to governmental custom even though such a custom has not received formal approval through the body's official decision-making channels.'"  Malachowski v. City of Keene, 787 F.2d 704, 711 (1st Cir. 1986) (alternation in original) (quoting Monell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978)); see Welch v. Ciampa, 542 F.3d 927, 941 (1st Cir. 2008) (explaining that a municipality may be liable "only if the violation occurs pursuant to an official policy or custom," citing Monell, 436 U.S. at 691).  To establish municipal liability, a plaintiff must show:  (1) a constitutional violation, (2) a "policy or custom" of the City that (3) actually caused the plaintiff's injury and (4) "that the municipality possesses the requisite level of fault."  See Young v. City of Providence, 404 F.3d 4, 25–26 (1st Cir. 2005) (citing Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 404 (1997)).

Here, the Nasirs have not met their burden as to the third and fourth elements. While a generous reading of the complaint allows for a plausible allegation that Foxborough had a custom of effectuating civil standbys, the Nasirs have not alleged the requisite causation or fault elements required for this claim.

Foxborough first asserts that the Nasirs have not alleged a policy or practice. D. 12 at 7. The Nasirs acknowledge that there is no settled standard for civil standbys in Foxborough (alleging that "[t]here is no Massachusetts statute establishing a civil standby," D. 1-1 ¶ 49, "[t]here is no police standard establishing a civil standby," id. ¶ 50, and "[t]here is no ordinance nor police policy establishing a civil standby in the Town of Foxborough," id. ¶ 51) and instead rely upon the theory that Foxborough has a well settled custom or practice of effectuating civil standbys.[2] Although a single instance of police misconduct cannot give rise to a showing of the requisite policy or custom, see McElroy v. City of Lowell, 741 F. Supp. 2d 349, 354 (D. Mass. 2010) (explaining that "[w]hile the existence of a municipal custom may be evidenced by the repetition of unlawful acts by officers, a single instance of police misconduct in the field, standing alone, is insufficient to establish the endorsement of an informal policy or custom by the City"), the conduct here was not so singular.

When multiple state actors jointly act in concert such that "[a]bsent such a norm, it is highly unlikely such unanimity of action could occur," a reasonable inference may be drawn that the "officers involved were operating under a shared set of rules and customs." Bordanaro v. McLeod,

---

[2] To the extent the Nasirs assert a violation of their right to petition the government in violation of the First Amendment based upon the allegations that they were prevented from filing a police report, D. 1-1 ¶ 86-87, this claim fails. The Nasirs have identified no caselaw as a basis for this claim. Cf. Lowery v. Kentucky Court of Justice, No. 1:18CV-P59-JHM, 2018 WL 5892367, at *4 (W.D. Ky. Nov. 9, 2018) (collecting cases and explaining that "individuals have no constitutional right to file a police report").

871 F.2d 1151, 1156 (1st Cir. 1989). The Nasirs have alleged such concerted action here where they allege Ansari-Nasir called the police requesting a civil standby, the police advised her on a civil standby, then accompanied her to her home to effectuate one and labeled this action a civil standby in their report. D. 12-1; D. 12-2. Like in Bordanaro, it is difficult to imagine these facts—a civilian knowing to request certain police action, requesting this action, the police documenting this request, advising the civilian on how to proceed the following day with the request to effectuate this action, then different officers, the following day, effectuating this action, all using common terminology—absent a custom in Foxborough of that practice. Accordingly, the Nasirs have plausibly alleged that Foxborough has a custom of effectuating civil standbys.

The Nasirs do not contend, however, that the custom or policy of effectuating a civil standby is facially unconstitutional. Indeed, officers have a "well-established duty to keep the peace," Seegmiller v. LaVerkin, 528 F.3d 762, 772 (10th Cir. 2008) (quoting Kelley v. Johnson, 425 U.S. 238, 245 (1976)), and there appears to be no caselaw suggesting that civil standbys are facially unconstitutional, see Malatesta v. N.Y. Div. of State Police, 120 F. Supp. 2d 235, 340 (N.D.N.Y. 2000) (noting that "neither party has cited a case which directly addresses the constitutionality of a 'civil standby'").

When the alleged municipal policy itself is not unconstitutional, the causal and fault elements for municipal liability require "significantly more." McElroy, 741 F. Supp. 2d at 355 (explaining that when the policy itself does not violate federal law and instead gives rise to subsequent conduct of subordinate employees that violates plaintiff's rights, "significantly more is needed to show sufficient causal connection between the municipal conduct and 'the deprivation of federally-protected rights'"); Santiago v. Lafferty, No. 13-CV-12172-IT, 2017 WL 1217115, at *12 (D. Mass. Mar. 31, 2017) (recognizing that if the custom is facially unconstitutional, issues of

fault and causation become "relatively straightforward" but explaining that "where, however, the identified 'custom' is facially lawful, the question of 'culpability' blurs" and a plaintiff must demonstrate that the municipal action was taken with deliberate indifference to known or obvious consequences).  Specifically, parties premising municipal liability on a facially constitutional custom or policy must plead facts that the "policy maker was at least deliberately indifferent to the possibility that the policy in question would lead to a deprivation of a federally-protected right." Hilchey v. City of Haverhill, 537 F. Supp. 2d 255, 263 (D. Mass. 2008).

Howie v. City of Providence, illustrates this standard's application at the pleading stage. See Howie v. City of Providence, 354 F. Supp. 3d 121 (D.R.I. 2019).  There, the defendant moved for judgment on the pleadings arguing that the plaintiff failed to allege facts to support municipal liability.  Id. at 122–123.  The court recognized that for the plaintiff to survive dismissal, he must plead "enough facts to show that the City knew there was a risk of civilians' rights being violated by its employees and yet deliberately failed to address this risk."  Id. at 125.  There, the plaintiff alleged that the police department had received 200 complaints in one year—all of which the chief of police viewed—to support his theory that the city was deliberately indifferent to police conduct related to the policy causing constitutional deprivations.  Id. at 123–124.  Based on these allegations, the court held that "[a]t this nascent stage" the plaintiff's use of "preliminary information . . . [is] at least partly indicative of the City's knowledge of a risk of potential violations of constitutional rights of persons with whom the police may be interacting, and its subsequent failure to undertake any actions that may mitigate such a risk . . . ."  Id. at 125.

Here, in contrast, the Nasirs have pled no facts suggesting that any policy maker was deliberately indifferent to the possibility that the practice of effectuating civil standbys might lead to a deprivation of federally protected rights.  Unlike in Howie, the Nasirs have not pled that any

8

policy maker was aware of any instance of misconduct related to civil standbys. Nor have the Nasirs alleged any other facts indicative of Foxborough's knowledge of a risk of potential violations of constitutional rights of persons in such circumstances, and its subsequent failure to undertake any actions that may mitigate such a risk. As such, the Nasirs have not pled facts sufficient to satisfy the causation and fault requirements of Section 1983 municipal liability claims. Accordingly, the Court ALLOWS the motion to dismiss as to Count 1 against Foxborough.

### 2. *Intentional Tort Claims*

The Nasirs also bring several intentional tort claims (Counts 2-7 and 9-10) against Foxborough. The Massachusetts Tort Claims Act (the "MTCA") creates a "cause of action against public employers for the negligent or wrongful acts or omissions of their employees within the scope of their employment." Nelson v. Salem State College, 446 Mass. 525, 537 (2006). Intentional torts, however, are expressly exempted from the MTCA and, therefore, a public employer "cannot be sued for its employees' intentionally tortious conduct." Id. (citing Mass. Gen. L. c. 258, § 2); see Freeman v. Town of Hudson, 849 F. Supp. 2d 138, 157 (D. Mass. 2012), aff'd, 714 F.3d 29 (1st Cir. 2013). Given that the Nasirs' intentional tort claims (Counts 2-7 and 9-10) against Foxborough are expressly barred by the MTCA, the Court ALLOWS the motion to dismiss as to Counts 2-7 and 9-10 against Foxborough.

### 3. *Negligence Claim*

Although the Nasirs' negligence claim (for negligent infliction of emotional distress in Count 8) stands on different footing with respect to the MTCA, the Court dismisses it for failure to state a claim. Under the MTCA, public employees shall be liable for injury caused by negligent acts of their employees. See Mass. Gen. L. c. 258, § 2. While public employees are immune from suit based on allegedly negligent conduct, "liability for the negligent acts of a public employee

committed within the scope of employment is visited upon the public employer, and not the employee." Stamps v. Town of Framingham, 38 F. Supp. 3d 146, 159 (D. Mass. 2014) (quoting Farrah ex rel. Estate of Santana v. Gondella, 725 F. Supp. 2d 238, 249 n.9 (D. Mass. 2010)) (internal quotations omitted). Here, the Nasirs allege that Foxborough is liable for negligent infliction of emotional distress based upon the Officers' actions. D. 18 at 7. To state a claim for negligent infliction of emotional distress in Massachusetts, plaintiffs must plead that they suffered physical harm. See Payton v. Abbot Labs, 386 Mass. 540, 556 (1982) (explaining that to state a claim for negligent infliction of emotional distress a plaintiff "must allege and prove she suffered physical harm as a result of the conduct which caused the emotional distress").

The Nasirs have not pled facts to satisfy this element. A failure to allege specific physical harm is fatal to a negligent infliction of emotional distress claim on a motion to dismiss. See Pierre v. United States, 741 F. Supp. 306, 313 (D. Mass. 1990) (dismissing plaintiff's claim for negligent infliction of emotional distress because plaintiff had "not alleged any physical symptoms of her own sufficient to support a claim"). The Nasirs pled that they "were, and remain[], noticeably distressed," D. 1-1 ¶ 197, but have made no other allegations that they suffered physical harm as a result of the conduct related to their emotional distress. These allegations, D. 1-1 ¶ 197, are insufficient to survive a motion to dismiss, because while pleading does not require detailed factual allegations, it requires more than "formulaic recitation of the elements." Hindle v. Toyota Motor Credit Corp., No. 18-CV-11306-FDS, 2018 WL 6033484, at *4 (D. Mass. Nov. 16, 2018) (quoting Iqbal, 556 U.S. at 678). The Nasirs' allegations that they were noticeably distressed does not meet this standard. See Hindle, 2018 WL 6033484, at *4 (dismissing a claim for negligent infliction of emotional distress because the plaintiff's allegations that they "experienced a 'great deal of stress and anxiety' and that their emotional distress 'manifested itself in physical symptoms'" was "mere

'formulaic recitation of the elements'"). Accordingly, the Court ALLOWS the motion to dismiss as to Count 8 against Foxborough.

### B.  Claims against the Foxborough Police Department

The Nasirs also assert all claims (Counts 1-10) against the Foxborough Police Department. D. 1-1 ¶¶ 161-236.  Foxborough asserts that the claims against the Foxborough Police Department must be dismissed because the police department is not a suable entity.  D. 12 at 11-12.  Police departments are not independent legal entities: they are departments of municipalities.  See Stratton v. City of Boston, 731 F. Supp. 42, 46–47 (D. Mass. 1989) (explaining that because the Boston Police department is not an independent legal entity but rather a department of the City of Boston, it is not a suable entity).  Accordingly, the claims against the Foxborough Police Department are dismissed.  Henschel v. Worcester Police Dep't, 445 F.2d 624, 624 (1st Cir. 1971) (per curium) (explaining that "the Police Department [is not] a suable entity").

### C.  Claims against the Officers

#### 1.  Constitutional Claims

The Nasirs bring constitutional claim under Section 1983, Count 1, against Officers Headd and Easter.  D. 1-1 ¶¶ 161-237.  Officers Headd and Easter argue that qualified immunity protects them from civil damages for such constitutional violation and, therefore, the Nasirs' constitutional claim must be dismissed.  D. 14 at 6.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  In Saucier v. Katz, the Supreme Court mandated a two-step sequence for resolving whether a government official was entitled to qualified immunity.  See Saucier v. Katz, 533 U.S.

194 (2001). First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. <u>Saucier</u>, 533 U.S. at 201. Second, if the first step has been met, the court must decide whether that right was "clearly established" at the time of the defendant's alleged misconduct. <u>Id.</u> Here, the Nasirs' allegations meet both steps.

a)      <u>Violation of Constitutional Rights</u>

The Nasirs allege a constitutional violation as a result of the Officers' actions in furtherance of an unlawful taking. D. 1-1 ¶¶ 55-63, 65, 77-78, 91. The "seizures of property are subject to Fourth Amendment scrutiny" and official participation in an unlawful taking can give rise to a constitutional violation. <u>Soldal v. Cook Cty., Ill.</u>, 506 U.S. 56, 68–69 (1992). In <u>Soldal</u>, the Court addressed the allegations that the County Sheriffs accompanied a landlord to an unlawful eviction to "forestall any possible resistance" while the property employees "wrench[ed]" objects from the home. <u>Id.</u> at 58. The Court held that these allegations "suffice to constitute a 'seizure' within the meaning of the Fourth Amendment, for they plainly implicate the interests protected by that provision." <u>Id.</u> at 72.

Under the Fourth Amendment, a "'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." <u>United States v. Jacobsen</u>, 466 U.S. 109, 113 (1984). "A police officer's mere presence at the site of an eviction or repossession" is not actionable, <u>Cox v. Drake</u>, No. C-1-04-277, 2006 WL 508723, at *5 n.6 (S.D. Ohio March 1, 2006), but an active participation in an unlawful taking can give rise to a constitutional claim, <u>Thomas v. Cohen</u>, 304 F.3d 563, 575 (6th Cir. 2002). Here, the Nasirs allege that the Officers actively restrained them while allowing Ansari-Nasir and her family to take their property. D. 1-1 ¶¶ 55-63, 65-66, 75, 77-78, 91, 115, 124. There is no contention that the Officers themselves removed property, rather, as alleged, the Officers restrained Aazar Nasir and detained

Azim Nasir while allowing Ansari-Nasir and her family to remove property from the Nasir Family Home. D. 1-1 ¶¶ 77-85, 124. As such, the Officers argue that they were not actively involved in the taking, and therefore cannot be considered "so entangled with a private self-help remedy that they may be held to answer under [Section] 1983." D. 14 at 13 (citing Cochran v. Gilliam, 656 F.3d 300, 306 (6th Cir. 2011)).[3]

Officers, however, need not have removed objects to be considered active participants in an unlawful taking. Indeed, in Sodal, the officers did not actively remove the trailer or other objects from the scene, but instead stood by while others removed them. Soldal, 506 U.S. at 59. There, the officers were nonetheless responsible for the interference with property because they told the plaintiff that they were there to prevent his interference in the repossession and refused to stop a legally questionable repossession. Id. at 72. Here, the Officers' action, as alleged, similarly facilitated the repossession. The Nasirs alleged that Officer Headd detained Azim Nasir outside the property, D. 1-1 ¶ 46, and Officer Easter physically restrained Aazar by putting his hand on his chest and pushing him against the wall and further threatened to jail Aazar if he did not stop speaking or remain in place, id. ¶ 75. While the Officers restrained Aazar Nasir and Azim Nasir, they allegedly allowed relatives and friends of Ansari-Nasir to collect property from the Nasir Family Home despite objections to removal. D. 1-1 ¶¶ 77-78.

Such alleged role in the repossession is more than the unactionable "mere presence at the scene to keep the peace while parties carry out their private repossession remedies." Revis v.

---

[3] The Officers also argue that no constitutional violation occurred because Ansari-Nasir consented to the Officers' entry into the home. D. 14 at 8. While a valid consent "to the entry by a person with apparent authority vitiates any Fourth Amendment concern," United States v. Gamache, 792 F.3d 194, 198 (1st Cir. 2015), consent made in the presence of an objecting inhabitant does not. Georgia v. Randolph, 547 U.S. 103, 106 (2006) (explaining that a physically present co-occupant's "stated refusal to permit entry prevails" and will render a warrantless search unreasonable).

Meldrum, 489 F.3d 273, 290 (6th Cir. 2007). Rather, the Officers here are alleged to have restrained members of the Nasir family while allowing Ansari-Nasir and her family and friends to carry off belongings, despite objections that Ansari-Nasir was not the owner. Soldal, 506 U.S. at 59–72 (holding that officers who, despite objections and a request to file a criminal trespass complaint, told the plaintiff to wait outside while private individuals hauled a trailer from the property, had participated in a seizure within the meaning of the Fourth Amendment). Although the outcome after discovery may be different,[4] the facts as alleged—the Officers' active restraint of members of the Nasir family, while allowing Ansari-Nasir and her friends and family to carry out the Nasirs' property in the face of their opposition—state a claim for officer participation in an unlawful taking.

b)      Whether that Right was Clearly Established

Officers Headd and Eastern contend that they also did not violate a clearly established right. D. 14 at 9-13. Qualified immunity protects those that do "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Conlogue v. Hamilton, 906 F.3d 150, 154 (1st Cir. 2018) (quotations omitted). Accordingly, the relevant inquiry is one of reasonableness.

The parties devote substantial argument to the common caretaker exception to the warrant requirement. D. 14 at 10; D. 17 at 9-11. The community caretaker exception to the warrant requirement, allows officers to make reasonable searches when engaged in "community caretaking

---

[4] The Officers attach to their motion what appears to be notes, D. 14-4, calling into question the ownership of the property the Nasirs allege was stolen during the May 27, 2017 Incident. Unlike, the police reports that were referenced in the complaint, these notes were not referenced and are therefore not incorporated therein. At this stage, this Court takes the Nasirs' alleged facts as true and therefore assumes, as alleged, that at least some of the items removed from the Nasir Family Home belonged to the Nasirs. D. 1-1 ¶¶ 78, 82, 86, 87.

functions totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." <u>Cady v. Dombrowski</u>, 413 U.S. 433, 441 (1973); <u>see United States v. Coccia</u>, 446 F.3d 233, 238 (1st Cir. 2006) (explaining that "[i]n performing this community caretaking role, police are 'expected to aid those in distress, combat actual hazards, prevent potential hazards from materializing and provide an infinite variety of services to preserve and protect public safety'" (citations omitted)). Indeed, the First Circuit has recognized that the "scope and boundaries of the community caretaking exception [to the warrant requirement] are nebulous" and thus police action pursuant to the function may permit a finding of qualified immunity. <u>MacDonald v. Town of Eastham</u>, 745 F.3d 8, 14 (1st Cir. 2014). Nevertheless, the Nasirs' Section 1983 claim survives because although the Officers' entry into the home and detention of the Nasirs may be protected by qualified immunity—or is otherwise unactionable,[5] the Officers' participation in an unlawful taking is not.

Qualified immunity protects officers assigned to a civil standby in monitoring a private repossession where the reasonable officer in his position would not have known that his action constituted invalid participation in a taking. <u>See Harris v. City of Roseburg</u>, 664 F.2d 1121, 1127–30 (9th Cir. 1981). As such, where officers, without a court order, participate in the repossession of property whose ownership is in dispute, they are entitled to qualified immunity when they are

---

[5] <u>See MacDonald</u>, 745 F.3d at 15 (holding that the officers' entry into a home pursuant to the community caretaking function was protected by qualified immunity in that instance); <u>United States v. Almonte</u>, No. C.R. 18-066-WES-LDA, 2019 WL 1436397, at *4 n.2 (D.R.I. Apr. 1, 2019) (holding that a detention for "less than thirty minutes for the limited purpose of obtaining identifying information, apprising her of a serious situation that involved both her husband as a suspect and her daughter as a witness, and asking her for consent to search her home" was a reasonable exercise of the community caretaking function).

presented evidence of ownership and/or otherwise conduct and investigation so as to support a reasonable belief that the taking was lawful. See e.g. Allin v. City of Springfield, 845 F.3d 858, 863 (7th Cir. 2017) (where the officer was entitled to qualified immunity because one of the parties claiming ownership presented him with a certificate of title and the officer conducted a title search).

As alleged here, the Nasirs repeatedly objected to Ansari-Nasir and her family's removal of certain items, D. 1-1 ¶ 78, and immediately tried to report stolen items after the incident. Id. ¶¶ 86-87. There is no suggestion from the complaint that the Officers did any investigation into the ownership of the property taken from the Nasir Family Home. Contrary to Higgins, where on summary judgment, the record established that although the officers were faced with objections from one party, they had an "abundance of evidence, pointing the other way," Higgins v. Penobscot Cty. Sheriff's Dep't, 446 F.3d 11, 15 (1st Cir. 2006), Officers Headd and Easter here had no reason, at least as alleged at this juncture, to believe Ansari-Nasir over the Nasir family. With these allegations—in face of an active dispute of ownership, in the absence of a court order, D. 1-1 ¶ 84, and without extrinsic evidence supporting one party's claim to property over others'—it was unreasonable for the Officers to believe they were participating in a lawful repossession. Compare Cochran, 656 F.3d at 309–310 (officers who actively participated in the removal of property from the premises were not entitled to qualified immunity when they had no reason to believe the removal of property was legal) with Higgins, 446 F.3d at 14–15 (where the officer was entitled to qualified immunity because their belief was supported by circumstantial evidence including the production of a written deed that substantiated one party's claim to ownership to the home, the fact that the other party was driving a truck with out-of-state license plates and the fact that the officer was long familiar with the property). In light of this precedence, the Court concludes that

the Officers are alleged to have violated a clearly established right, see Cochran, 656 F.3d at 311, and qualified immunity does not bar Count 1 against the Officers.

For the aforementioned reasons, the Court DENIES the Officers' motion to dismiss Count 1, the Section 1983 claim, against them.

2. *State Law Claims*

Officers Easter and Headd assert that the state law claims, Counts 2 through 10, suffer from several deficiencies including that the claims are barred by common law immunity or otherwise fail to state a claim.  D. 14 at 7-8,13-18.

a) <u>Common Law Immunity</u>

Common law immunity is distinct from qualified immunity under federal law.  See Duarte v. Healy, 405 Mass. 43, 46 (1989).  Under common law immunity, government employees acting within their discretion as public officials and in good faith are shielded from liability.  See Najas Realty, LLC v. Seekonk Water Dist., 821 F.3d 134, 145–146 (1st Cir. 2016) (discussing how, in affirming the dismissal of intentional tort claims, "a public official, exercising judgment and discretion, is not liable for negligence or other error in the making of an official decision if the official acted in good faith, without malice, and without corruption" quoting Nelson, 446 Mass. at 537 (internal quotation marks omitted)).  This immunity extends to public officials exercising discretionary functions who are "acting with good faith, without malice and without corruption." Brothers v. Town of Millbury, No. 14-CV-10122-TSH, 2014 WL 4102436, at *11 (D. Mass. Aug. 14, 2014) (quotations omitted).

The Nasirs do not dispute that the Officers were acting in their discretionary function during the May 27, 2017 Incident.  Rather, the Nasirs dispute the applicability of common law immunity here by arguing that the Officers acted in bad faith.  D. 17 at 18.  The complaint alleges

that the Officers acted with "wanton and intentional circumvention of the law and procedure," D. 1-1 ¶¶ 57, 95, 199, but alleges no factual circumstances supporting malice or bad faith.

Although this Court has held above that the Officers are not entitled to qualified immunity under federal law, overcoming Massachusetts' common law immunity requires more. The common law immunity takes "every presumption in favor of the honesty and sufficiency of the motives actuating public officers in actions ostensibly taken for the general welfare." S. Bost. Betterment Trust Corp. v. Bost. Redev. Auth., 438 Mass. 57, 69 (2002) (quoting Foster from Gloucester, Inc. v. City Council of Gloucester, 10 Mass. App. Ct. 284, 294 (1980)). Allegations that demonstrate defendants acted with bad faith or malice may overcome defendants' claim to common law immunity. Echavarria v. Roach, No. 16-CV-11118-ADB, 2017 WL 3928270, at *14 (D. Mass. Sept. 7, 2017). "Bad faith has been defined to suggest a 'breach of a known duty through some motive of interest or ill will.'" Brothers, 2014 WL 4102436, at *11 (quoting Spiegel v. Beacon Participations, 297 Mass. 398, 416 (1937)). "Malice means a wrongful act, done intentionally, without just cause or excuse." Brothers, 2014 WL 4102436, at *11 (quoting McGurk v. Cronenwett, 199 Mass. 398, 416 (1937)).

The factual allegations here do not rise to this level. At most, the Nasirs' allegations suggest that the Officers were unreasonable in participating in a taking without doing additional diligence. Unlike in Echavarria, there are no allegations that Officers Headd and Easter acted in a corrupt manner in carrying out their duties. Echavarria, 2017 WL 3928270, at *14 (explaining that the plaintiff's "allegations that Defendants fabricated evidence, deliberately withheld exculpatory evidence, and concealed their misdeeds describe not mere negligence, but malice and corruption"). Nor are there any allegations that Officer Headd and Easter's actions were fueled by improper motives. See Brothers, 2014 WL 4102436, at *11 (where allegations of "hasty

investigation, untruthful reports, and the destruction of evidence" along with the allegations that the defendant's actions "were fueled by personal animosity and retaliatory motives" were sufficient allegations to surpass the presumption of common law immunity).

As such, with even the most liberal reading of the alleged facts, the Nasirs' generalized and conclusory allegations, without more, do not overcome the presumption that the Officers were acting in good faith in carrying out their official duties. See Najas Realty, LLC, 821 F. 3d at 145–146 (affirming the dismissal of a tort claim because "conclusory allegations" of bad faith or malice "are not enough" to overcome Massachusetts' common law immunity); Lee v. Quincy Hous. Auth., No. 16-CV-11631-RGS, 2017 WL 402972, at *2 (D. Mass. Jan. 30, 2017) (dismissing tort claims because the plaintiff put forth "no facts to suggest that [the defendant's] actions fell short" of the common law immunity standard). Accordingly, the Court ALLOWS the motion to dismiss as to the state law tort claims, Counts 2-10, against the Officers.

b)    Additional Deficiencies

Although common law immunity warrants dismissal of all state tort claims here, several of the state law claims against the Officers suffer from additional deficiencies.

i.    Negligent Infliction of Emotional Distress (Count 8) and Emotional Distress (Count 5)

The negligence claims fail for the additional reason that they are barred by the MTCA. Mass. Gen. L. c. 258, § 2. To state a claim for negligent infliction of emotional distress, a plaintiff must prove the following: "(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case." Davila-Lynch v. City of Brockton, No. 09-CV-10817-RGS, 2011 WL 4072092, at *7 (D. Mass. Sept. 12, 2011) (citing Payton v. Abbott Labs, 386 Mass. 540, 557 (1982)). Negligence claims against public employees "in their

individual capacities are barred because the [MTCA] shields public employees from personal liability for negligence conduct." <u>Caisse v. DuBois</u>, 346 F.3d 213, 218 (1st Cir. 2003). As such, the negligent infliction of emotional distress claim, Count 8, is barred. To the extent Count 5 intends to allege negligent infliction of emotional distress against the Officers, it is also barred.

### ii. Defamation (Count 9)

Even assuming the common law immunity did not apply here, the Nasirs fail to state a claim for defamation against the Officers. "To prevail on a claim of defamation, a plaintiff must establish that the defendant was at fault for the publication of a false statement regarding the plaintiff, capable of damaging the plaintiff's reputation in the community, which either caused economic loss or is actionable without proof of economic loss." <u>White v. Blue Cross & Blue Shield of Mass.</u>, 442 Mass. 64, 66 (2004) (footnote and citation omitted). The Nasirs' defamation claim (Count 9) appears to rely upon statements made in the police log. D. 1-1 ¶¶ 221-229. The allegations note that the "[p]olice Incident is published in the police log," <u>id.</u> ¶ 226, and that the Foxborough Police "has damaged the reputation, image, and standing in the community of the whole Nasir Family," <u>id.</u> ¶ 224. The Nasirs do not, however, allege that the statements made in the police log were false: a necessary requirement of a defamation claim. <u>See White</u>, 442 Mass. at 66. In any event, the defamation claim fails because police logs are public records under Mass. Gen. L. c. 41, § 98F. Public records are not actionable publications for defamation purposes, <u>see Tomczak v. Town of Barnstable</u>, 901 F. Supp. 397, 404 (D. Mass. 1995) (dismissing a defamation claim because the alleged publication was that in the daily police log), and the Nasirs have not made any other allegations that the Officers published any information other than that available to the public as a matter of right in the public record.

## VI.     Conclusion

For the foregoing reasons, the Court ALLOWS Foxborough's motion, D. 11, and ALLOWS IN PART and DENIES IN PART the Officers' motion, D. 13.  In light of this ruling, the only claim remaining is the Section 1983 claim, Count 1, against the Officers.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge