**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**AZIM NASIR, AAZAR NASIR and REFAT NASIR,**

**Plaintiffs**

**v.**

**TOWN OF FOXBOROUGH, FOXBOROUGH POLICE DEPARTMENT, OFFICER JAMES HEADD and OFFICER STEVE EASTER,**

**Defendants.**

**Case No. 19-cv-11196-DJC**

**MEMORANDUM AND ORDER**

**CASPER, J.** **February 7, 2022**

## I. Introduction

Plaintiffs Azim Nasir, Refat Nasir and Aazar Nasir (collectively, the "Nasirs") have filed this lawsuit against the Town of Foxborough, the Foxborough Police Department (collectively, "Foxborough"), Officer James Headd ("Officer Headd") and Officer Steve Easter ("Officer Easter") (collectively, the "Officers") alleging a violation of 42 U.S.C. § 1983 (Count I) and eight other counts. D. 1-1. The Court previously dismissed all claims except for Count I as against the Officers. D. 21. The Officers now move for summary judgment. D. 50. For the reasons stated below, the Court ALLOWS the motion.

## II. Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter

of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the outcome of the suit under applicable law." Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000). The movant bears the burden of demonstrating the absence of a genuine issue of material fact. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets its burden, the non-moving party may not rest on the allegations or denials in its pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but must come forward with specific admissible facts showing that there is a genuine issue for trial. Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010). The "inquiry" is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251–52. The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

## III. Factual Background

### A. Request to Strike

As a preliminary matter, the Nasirs request that the Court strike the Officers' statement of undisputed material facts, D. 52. See D. 54 ¶¶ 1–5. The Nasirs argue that the Officers' statement improperly relies upon unauthenticated documents, including a copy of a probate court judgment, a copy of the police reports of the incident in this case and excerpts from five depositions taken in the case. Id. The Court denies the Nasirs' request.

First, the Nasirs included their request to strike in their statement asserting genuine disputes of material fact. See id. Local Rule 7.1, however, required them to file a separate motion, which they failed to do. See D. Mass. L.R. 7.1; Johnson v. City of Worcester, No. 17-cv-40103-TSH,

2020 WL 1140077, at *1 n.4 (D. Mass. Mar. 9, 2020) (stating that party arguing "that exhibits cited in support of [adverse party's] factual assertions were inadmissible . . . should have filed a formal motion to strike"); Endurance Am. Specialty Ins. Co. v. Northland Inv. Corp., No. 18-cv-10724-FDS, 2018 WL 2994405, at *1 (D. Mass. June 14, 2018) (stating that under Local Rule 7.1 all requests for relief "must be filed as a separate motion, and not contained in a response to another motion"). Failure to comply with Local Rule 7.1 alone constitutes sufficient grounds to deny the request. See Martinez v. Hubbard, 172 F. Supp. 3d 378, 385 (D. Mass. 2016).

Second, even considering the merits of the Nasirs' request, since filing their statement of undisputed material fact the Officers (and counsel) have submitted affidavits attesting to the authenticity of the six attached exhibits, mooting the Nasirs' concerns. See D. 60; D. 61; D. 62.

Third and most significantly, even without the affidavits, the Officers' exhibits satisfy the requirements of Fed. R. Civ. P. 56. The Nasirs rely upon Carmona, 215 F.3d at 131, to argue that Rule 56 requires that documents submitted with a summary judgment motion must be authenticated by and attached to an affidavit. See D. 54 ¶ 3. Carmona, however, was decided prior to a 2010 amendment to Rule 56, which now requires a party asserting a fact to support it by "citing to particular parts of materials in the record," such as depositions. See Fed. R. Civ. P. 56(c)(1)(A). Further, although evidence must be capable of authentication at trial, it need not be presented in admissible form in a summary judgment motion. See Joseph v. Lincare, Inc., 989 F.3d 147, 155 n.4 (1st Cir. 2021) (comparing Carmona with Maurer v. Indep. Town, 870 F.3d 380, 384 (5th Cir. 2017) (noting that, after the 2010 amendment to Rule 56, all that must be shown is that the evidence "be capable" of authentication at trial (emphasis omitted)) and Jones v. UPS Ground Freight, 683 F.3d 1283, 1293–94 (11th Cir. 2012) (stating that district court may consider hearsay on motion for summary judgment "if the statement could be reduced to admissible

evidence at trial or reduced to admissible form")). The Nasirs fail to explain why the evidence they seek to strike could not be presented in an admissible form at trial.

Moreover, each of the exhibits is proper for consideration on summary judgment. The probate court judgment, D. 52-1, constitutes a public record susceptible to judicial notice. See Boateng v. InterAmerican Univ., Inc., 210 F.3d 56, 60 (1st Cir. 2000); In re Colonial Mortgage, 324 F.3d 13, 16 (1st Cir. 2003). The police reports, D. 52-5; D. 52-6, fall under the public records exception to the hearsay rule. See Bolduc v. United States, 265 F. Supp. 2d 153, 164 (D. Mass. 2003) (stating that police reports are admissible under the public records exception in civil cases). Finally, the depositions, D. 52-2; D. 52-3; D. 52-4, comply with Local Rule 56.1, which allows a party to cite to page references of "depositions and other documentation" as long as "[c]opies of all referenced documentation" are filed as exhibits to the motion. See D. Mass. L.R. 56.1. Accordingly, the Court denies the Nasirs' request to strike.

**B. Undisputed Facts**

The following facts are undisputed unless otherwise noted and are drawn from the Officers' statement of undisputed material facts, D. 52, and accompanying documents.

Azim Nasir and Refat Nasir are married and, along with their adult son, Aazar Nasir, live at a residence in Foxborough, Massachusetts (the "Nasir Residence"). D. 52 ¶ 1. Aazar Nasir married Maryam Ansari ("Ansari") on February 25, 2017, and the couple had additional ceremonies in the months to follow in Massachusetts and New York. Id. ¶ 2.

For one of the ceremonies, Refat Nasir gave Ansari six gold bangle bracelets to wear. Id. ¶ 3. After the ceremony, Refat Nasir removed four additional bracelets of her own and gave them to Aazar Nasir to pass on to Ansari to wear for the wedding night. Id. ¶ 4. For another ceremony, Ansari wore a light blue bridal dress. Id. ¶ 5. Ansari had selected and purchased the dress prior

to the wedding ceremonies while visiting Pakistan with her mother. Id. ¶ 6. Under an arrangement with Refat Nasir, Ansari provided her with the receipt for reimbursement. Id. ¶ 7. The arrangement resembled something "between a gift and a loan." Id. ¶ 8.

On April 17, 2017, Ansari moved into the Nasir Residence with the Nasirs. Id. ¶ 11. On May 27, 2017, at 1:46 a.m., Ansari called the Foxborough Police Department from her parents' home in New York. Id. ¶ 26; see D. 52-5. Ansari reported that her relationship with her husband had been difficult since she moved in and that he had been controlling and verbally abusive. D. 52 ¶¶ 28–29. Ansari told the officer about how she needed to leave the Nasir Residence so she packed some belongings on May 26, 2017 and left with her parents. Id. ¶ 30; see id. ¶¶ 20–25. She said that her father-in-law became angry and did not want her to leave. Id. ¶ 30. Further, Ansari said that she wanted to return to the Nasir Residence to retrieve the remainder of her belongings. Id. ¶ 31. She stated that she would only need ten to fifteen minutes with an officer present to retrieve her things. Id. Officer Kelly Colvin advised Ansari to come into the police station to speak with an officer about "doing a civil standby," and Ansari responded that she would be in the next day to speak with an officer. Id. ¶ 32–33.

On May 27, 2017, at about 4:00 p.m., the Officers were assigned to assist Ansari with a civil standby. Id. ¶ 34; see D. 52-6 at 5. Accompanied by the Officers and members of her family, Ansari returned to the Nasir Residence with suitcases. D. 52 ¶¶ 35–36. Outside the house, one of the Officers told Azim Nasir that he was detained and not allowed to go inside. Id. ¶ 37. Ansari, her aunt and her sister entered through the garage door, not waiting for police escort or permission. Id. ¶ 38. Refat Nasir left Azim Nasir with the Officers in the front yard and followed the Ansari party into the house. Id. Eventually both Officers also entered the house. See id. ¶¶ 37, 39.

Upstairs, Aazar Nasir came out of his room and asked the Ansari party, "What are you doing here?" Id. ¶ 40. Ansari, her aunt and her sister did not respond and immediately entered the bedroom that Aazar Nasir and Ansari had shared. Id. ¶ 41. One of the Officers physically restrained Aazar Nasir against a wall. Id. ¶ 42.[1] Officer Easter told Aazar Nasir that Ansari had ten minutes to retrieve her belongings. Id. ¶ 43. An officer then sternly told the Ansari party, "[Y]ou have a couple minutes." Id. ¶ 44. At one point Officer Easter remarked to Officer Headd, "This is bullshit. I don't even know what we're doing here." Id. ¶ 45. Once arguing among the Nasirs and the Ansari party escalated, the Officers told Ansari that she and her family needed to leave the house. Id. ¶¶ 45–47. The Ansari party gathered their bags and went downstairs, followed by the Officers and then Aazar Nasir and Refat Nasir. Id. ¶ 49.

Refat Nasir never asked to look through the bags; Officer Headd had suggested that she check a suitcase. Id. ¶ 50. Refat Nasir has no knowledge of what was in the bags taken by Ansari and her family on May 27, 2017. Id. ¶ 51. Azim Nasir saw Ansari and her family members exit the Nasir Residence with suitcases but never went inside during the incident and so did not observe them take any property. Id. ¶ 52.

Aazar Nasir filed for divorce in Massachusetts on August 4, 2017. Id. ¶ 53; see D. 52-1. Through the divorce proceeding, Refat Nasir sought to recover the ten gold bangle bracelets and the blue bridal dress worn by Ansari during the wedding ceremonies. D. 52 ¶ 54. The probate court found that the bracelets and dress belonged to Refat Nasir and ordered Ansari to return them. Id. ¶ 56.

[1] The Nasirs purport to dispute this fact, arguing that it omits the name of the officer and fails to indicate that the officer instigated the interaction with Aazar Nasir, see D. 54 ¶ I.42, but such does not dispute the fact of the interaction as described. See D. 52 ¶ 42.

Ansari kept the bracelets and dress between the time of the wedding ceremonies and the time the divorce court ordered her to return them. Id. ¶¶ 57–59. Refat Nasir did not see either item during that period and does not know when they were removed from the Nasir Residence. Id. Through the divorce proceeding, Refat Nasir regained possession of all ten bracelets and the blue bridal dress. Id. ¶ 62. None of the Nasirs are aware of any property belonging to them that Ansari or her family members took on May 27, 2017 when the officers accompanied them to the Nasir Residence. Id. ¶¶ 61–62, 64–65.[2]

## IV. Procedural History

The Nasirs commenced this action in Norfolk Superior Court on May 15, 2019. D. 1-1. Defendants removed the case to this Court on May 28, 2019. D. 1. Foxborough and the Officers each moved to dismiss. D. 11; D. 13. On March 3, 2020, the Court dismissed all claims except the Section 1983 claim (Count I) as against the Officers. D. 21. The Officers now move for summary judgment on Count I. D. 50. The Court heard the parties on the pending motion and took the matter under advisement. D. 63.

## V. Discussion

The Nasirs' sole remaining count is a constitutional claim under Section 1983 alleging that the Officers violated the Fourth Amendment by facilitating an unlawful seizure of property. See D. 1-1 ¶¶ 161–66; D. 21 at 11–17. The Officers argue that they are protected by qualified

[2] The Nasirs seek to establish disputes of material fact. See D. 54 ¶¶ II.1–II.4. First, they attempt to adopt the facts as described in the Court's memorandum and order at the motion to dismiss stage, D. 21. See D. 54 ¶ II.1. But there the Court was required to accept the fact as alleged in the complaint as true. See García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). By contrast, at the summary judgment stage the non-moving party may not rest on the allegations in its pleadings. Anderson, 477 U.S. at 256. Second, the Nasirs list a series of facts that they argue to be in dispute. See D. 54 ¶¶ II.2–II.4. These facts, however, are immaterial to the Court's summary judgment determination as to qualified immunity.

immunity and, therefore, entitled to judgment as a matter of law. D. 51 at 5.[3]

The qualified immunity doctrine "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In Saucier v. Katz, 533 U.S. 194, 201 (2001), the Supreme Court established a two-part inquiry for resolving whether a government official is entitled to qualified immunity. First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Id. Second, the court must decide whether that right was "clearly established" at the time of the defendant's alleged misconduct. Id. "Because qualified immunity is an affirmative defense to liability, the burden is on the defendants to prove the existence of circumstances sufficient to bring the defense into play." Alston v. Town of Brookline, 997 F.3d 23, 50 (1st Cir. 2021) (citing DiMarco-Zappa v. Cabanillas, 238 F.3d 25, 35 (1st Cir. 2001)). Thus, the burden here is on the Officers to show the Nasirs' inability to prove a violation of constitutional rights, given the undisputed material facts.

[3] The Nasirs argue that the Court previously ruled on the "threshold" issue of qualified immunity and determined that there was no qualified immunity as to the Officers. See D. 53 ¶ 3 (citing D. 21). The Nasirs are incorrect. The Court's prior decision merely held that the Nasirs sufficiently alleged a violation of Section 1983 in their complaint to survive the Officers' motion to dismiss Count I. D. 21 at 16–17. The Court was careful to note that its ruling there was based on facts "as alleged." See id. (stating that the officers "are alleged to have violated a clearly established right"). Qualified immunity did not bar Count I from proceeding against the officers. Id. On a fully developed record, however, it is clear that qualified immunity does bar the claim here. The Officers, therefore, were not barred from raising this issue on summary judgment based on facts uncovered through discovery. Moreover, while courts strive to address qualified immunity at "the earliest possible stage in litigation," Hunter v. Bryant, 502 U.S. 224, 227 (1991), the defense may still be considered at the summary judgment stage, see Alston v. Town of Brookline, 997 F.3d 23, 50–51 (1st Cir. 2021).

1. *Whether the Officers Violated a Constitutional Right*

The Nasirs allege a violation of the Fourth Amendment. "[S]eizures of property are subject to Fourth Amendment scrutiny," and official participation in an unlawful taking can give rise to a constitutional violation. See Soldal v. Cook Cnty., Ill., 506 U.S. 56, 68–69 (1992). Under the Fourth Amendment, a "'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." United States v. Jacobsen, 466 U.S. 109, 113 (1984). While "[a] police officer's mere presence at the site of an eviction or repossession" is not actionable, Cox v. Drake, No. C-1-04-277, 2006 WL 508723, at *5 n.6 (S.D. Ohio Mar. 1, 2006), active participation in an unlawful taking can give rise to a constitutional claim, Thomas v. Cohen, 304 F.3d 563, 575 (6th Cir. 2002); see Soldal, 506 U.S. at 68–69 (holding that county sheriffs' accompaniment of landlord to unlawful eviction to "forestall any possible resistance" constituted a "seizure" under Fourth Amendment).

Here, there is no evidence that Ansari, her family or the Officers removed Refat Nasir's gold bracelets, the blue bridal dress or any other property belonging to the Nasirs during the civil standby on May 27, 2017. Refat Nasir never saw the bracelets or the dress from the time Ansari wore them during the wedding ceremonies until the divorce court ordered Ansari to return them in January 2019. D. 52 ¶¶ 57–60. She did not know if Ansari kept them in New York or in Foxborough, nor did she see them during the incident on May 27, 2017. Id. Although Azim Nasir saw Ansari and her family members take suitcases from the house, he did not observe them remove any property because he never went inside during the incident. Id. ¶ 52. Moreover, none of the Nasirs could name any property belonging to them that Ansari took on May 27, 2017. Id. ¶¶ 61–62, 64–65. Because the Nasirs cannot show that any of their property was unlawfully taken by Ansari, her family or the Officers during the civil standby, the Nasirs cannot establish that there

was a "meaningful interference" with their "possessory interests" in any property. See Jacobsen, 466 U.S. at 113.

The Nasirs respond that "[t]he defendants are alleged to have detained Azim and restrained Aazar while allowing the Ansari party to enter the Nasir premises and remove property" belonging to the Nasirs and "[t]he Court deemed these allegations, if true, to constitute more than an effort by the defendants to keep the peace." D. 53 ¶ 14 (citations omitted). But this argument fails adequately to address the issue of whether the Ansari party in fact removed property belonging to the Nasirs. The non-moving party may not rest on the allegations in its pleadings at the summary judgment stage. Anderson, 477 U.S. at 256. Thus, the Nasirs' argument—dependent on the facts as initially alleged—does not alter the Court's conclusion based on the undisputed facts revealed through discovery that there exists no evidence of the Nasirs' property being taken.[4]

A key factor in the Court's ruling at the motion to dismiss stage as to the unlawful taking was the allegation that Ansari and her family "carr[ied] out the Nasirs' property." See D. 21 at 14 (noting that "the outcome after discovery may be different"). Indeed, the Fourth Amendment doctrine at issue here implicates "seizures of property." See Soldal, 506 U.S. at 68–69 (involving seizure and removal of trailer home). Contrary to the allegations in the complaint, however, the undisputed facts show that the Nasirs cannot prove that Ansari, her family or the Officers took any of the Nasirs' property during the civil standby on May 27, 2017. The Officers, therefore, could not be found to have actively participated in an unlawful taking in violation of the Fourth Amendment. See Thomas, 304 F.3d at 575. Even viewing the facts in the light most favorable to

---

[4] The issue on summary judgment relates only to the alleged taking of private property from the Nasir Residence, not the Officers' alleged entry into the home and detention of the Nasirs. See D. 21 at 15 (stating that Count I survived motion to dismiss based on Officers' alleged participation in unlawful taking).

the Nasirs, see Noonan, 556 F.3d at 25, "the evidence" does not "present[] a sufficient disagreement to require submission to a jury" and is "so one-sided that [the Officers] must prevail as a matter of law," see Anderson, 477 U.S. at 251–52.

2. *Whether That Right Was Clearly Established*

Even if the Officers did violate a constitutional right, qualified immunity shields them from liability if that right was not clearly established. Qualified immunity protects those that do "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Conlogue v. Hamilton, 906 F.3d 150, 154 (1st Cir. 2018) (citation and internal quotation marks omitted). To defeat qualified immunity there must exist "controlling authority or a robust consensus of cases of persuasive authority" showing that the law was clearly established at the time of the alleged violation. Mitchell v. Miller, 790 F.3d 73, 78 (1st Cir. 2015).

Qualified immunity protects officers who monitor a private repossession during a civil standby where a reasonable officer in that position would not have known that his action constituted unlawful participation in a taking. See Harris v. City of Roseburg, 664 F.2d 1121, 1127–30 (9th Cir. 1981). Prior circuit court decisions, including from the First Circuit, provide some guidance regarding the bounds of permissible conduct for officers involved in such civil standbys. See, e.g., Cochran v. Gilliam, 656 F.3d 300, 309–10 (6th Cir. 2011); Higgins v. Penobscot Cnty. Sheriff's Dep't, 446 F.3d 11, 15 (1st Cir. 2006). In Cochran, officers who actively participated in the removal of property from the plaintiff's home were not entitled to qualified immunity when they had no reason to believe that the removal of property was legal. Cochran, 656 F.3d at 309–10. By contrast, in Higgins, the officers were entitled to qualified immunity because circumstantial evidence supported the officers' belief in one party's claim of ownership to a disputed property. Higgins, 446 F.3d at 14–15.

To the extent that the Court drew parallels to Cochran or Higgins at the motion to dismiss stage, it is clear on summary judgment with a complete record that there was no clearly established law to indicate that the Officers violated any constitutional right here. Through discovery, the Officers have shown that they believed they were responding to a potential domestic violence situation, D. 52 ¶¶ 28–29; that Ansari had resided at the Nasir Residence the day before the incident, id. ¶ 30; that she had left the home but said she wanted safely to return to retrieve her belongings, id. ¶ 31; and that the Officers went to the Nasir Residence to assist with such retrieval, id. ¶ 43. Contrary to Cochran, the Officers here had sufficient reason to believe that Ansari's removal of property from the Nasir Residence was legal.[5] Moreover, Higgins involved an ongoing dispute of home ownership, whereas here Refat Nasir claims the temporary loss of personal property but does not know when such items were removed from the Nasir Residence. Thus, given the facts revealed through discovery, these cases fail to indicate the existence of "controlling authority or a robust consensus of cases of persuasive authority" that could have directed the Officers' conduct in the present scenario. See Mitchell, 790 F.3d at 77–78. Accordingly, the Officers' assisting with the civil standby while Ansari removed her belongings from the Nasir Residence did not violate any "clearly established" right "of which a reasonable person would have known." See Conlogue, 906 F.3d at 154. Additional cases cited by the Nasirs fail to address the circumstances at issue here and, therefore, do not alter the Court's conclusion that qualified immunity applies to the Officers as to the remaining claim. See D. 53 ¶¶ 15–16.

[5] During the motion hearing, see D. 63, counsel for the Nasirs mentioned statements on the day of the incident by the Nasirs to the Officers that would have put the Officers on notice that Ansari sought to take items not belonging to her. Counsel further mentioned evidence that the Ansari party entered rooms other than the bedroom that Aazar Nasir and Ansari had shared. Neither of these purported facts, however, are borne out in the record.

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS the Officers' motion for summary judgment, D. 50.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge